IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SANDRA LEE BARCUS

v.                              Civil No. CCB-12-724

SEARS, ROEBUCK AND CO.

## MEMORANDUM

Plaintiff Sandra Lee Barcus[1] brings this suit against defendant Sears, Roebuck and Co. ("Sears"), her former employer, for alleged *quid pro quo* sexual harassment by Charles Billups, another Sears employee. Sears now moves for summary judgment. The parties have fully briefed the issues, and no oral argument is necessary. *See* Local R. 105.6 (D. Md. 2011). For the reasons set forth below, the motion will be granted.

## BACKGROUND

Sears does not dispute Barcus's basic account of what transpired, including the sequence of events that gave rise to her claim for sexual harassment. All reasonable inferences are drawn in Barcus's favor.

Barcus first became affiliated with Sears when she began part-time work at its Gaithersburg, Maryland, store in August 2007. After promoting Barcus and subsequently transferring her to Kmart, a Sears affiliate, Sears assigned Barcus in August 2010 to supervise temporary workers tasked with remodeling several departments in the Sears store in Silver

---

[1] Plaintiff married and changed her name to Sandra Lee Franklin after she filed this action. She has not amended the complaint to reflect this change, however, and the parties refer to plaintiff as Barcus in their memoranda and deposition citations. The court therefore will refer to plaintiff by her former name despite the marital change.

Spring, Maryland. Barcus opposed the assignment, however, because her prior professional experience had been in the clothing departments, and Sears evidently had assured Barcus that she would work as a lead in one of those departments. She asked the general manager of the Silver Spring store, Shannon Evans, to transfer her to a clothing department, but Evans told Barcus that no other positions were available at that time.

The objectionable assignment proved short-lived because the remodel project was slated to last just ninety days. In October 2010 Sears reassigned Barcus as a visual specialist in the Home Fashions department—an assignment to which Barcus also objected. She continued to seek an assignment in a clothing department, and she believed the new position to be a demotion. Her dissatisfaction with her new role led to the exacerbation of an already contentious relationship with Evans. Barcus testified that Evans would yell at her and call her "dumb and stupid." (Barcus Dep. 52:3–20, ECF No. 19-4.) Soon after Sears reassigned Barcus as a visual specialist, Barcus sought to be transferred to the Sears store in Frederick, Maryland. The human resources representative at the Frederick store initially expressed interest in hiring Barcus, but after that representative spoke with Evans, she informed Barcus that there were no positions available at that store.

As Barcus's relationship with Evans continued to deteriorate, she became acquainted with another Sears employee named Charles Billups. Billups joined the Silver Spring store in October 2010—the same month Barcus became a visual specialist—as a member of the Manager in Training program, which Sears created to provide candidates for general manager positions in its stores with tutelage as well as opportunities to learn about its products and operations. In that capacity Billups worked closely with Evans, and at times he would "discharge . . . Evans's managerial functions" when she was absent. (Barcus Aff. ¶ 3, ECF No. 22-1.)

Billups often witnessed the antagonistic interactions between Barcus and Evans. One day Billups noticed that Barcus was "trembling and in tears," (ECF No. 19-7 at 3), and when Billups saw her in the store warehouse later that afternoon, the two of them discussed Evans's purported desire to fire Barcus. Barcus expressed trepidation about losing her job, and Billups sought to console her. Billups assured Barcus that he would soon manage his own Sears store and that he would hire Barcus as a lead in that store. Although Billups was not sure when he would be promoted to general manager, Barcus was grateful for his offer and gave her phone number to Billups.

Barcus maintained a collegial relationship with Billups for a few weeks after that encounter, but soon thereafter Billups's sexual interests became apparent. Billups began to make suggestive comments about Barcus's physical appearance, including her breasts and lips, and "would touch [Barcus] on the back with his pen." (ECF No. 19-8 at 6.) Barcus did not welcome or sanction the contact, but she never reported the conduct and did not object because she did not want to jeopardize Billups's assurance of future employment.

The nature of the relationship between Barcus and Billups changed on November 15, 2010. On that date Billups led Barcus through a back door into a vacant H&R Block office annexed to the Sears store, and he said to Barcus, "Take care of me, I'll take care of you." (Barcus Dep. 113:18–22.) Barcus understood this comment to be a solicitation for oral sex in exchange for a guarantee of future employment if and when Sears promoted Billups to general manager of one of its stores. Billups then removed his penis from his pants and placed his hands on her shoulders, and Barcus performed oral sex. Barcus performed oral sex on Billups on three other occasions in November 2010, and on one of those occasions Billups and Barcus also engaged in sexual intercourse. Billups initiated the encounter each time via text message, and on

each occasion Barcus met Billups in the vacant H&R Block office. Barcus never told anyone about her sexual encounters with Billups while she was employed at Sears, and no one witnessed those encounters.

In December 2010 Billups transferred to the Sears store in Hyattsville, Maryland, and his sexual relationship with Barcus ended. Billups nevertheless remained in contact with Barcus and met with her at the Hyattsville store. Billups subsequently arranged for her to interview with the general manager of that store on December 29 for a lead position in the men's department. Billups provided Barcus with the store's address, and after the interview he advised Barcus to submit a letter to Evans requesting a transfer to the Hyattsville store. Barcus prepared the request, handed a copy to a human resources representative in the Silver Spring store, and left another copy on Evans's chair on December 30. Barcus never discussed the request with Evans.

On January 7, 2011, Evans confronted Barcus after Barcus changed the bedding on four display beds in the store. When Evans asked Barcus, in the presence of the Home Fashions department manager, why Barcus had changed the display, Barcus informed Evans that her manager had instructed her to change the bedding. The manager corroborated this account to Evans, but Evans informed Barcus that she should not have changed the bedding, and Evans fired Barcus on the spot. Barcus immediately left Evans's office to call a Sears telephone hotline to lodge a complaint. After a security guard escorted Barcus from the store, she explained to the Sears hotline representative that she had been fired for changing the bedding, despite her compliance with her manager's directive.

Sears administratively closed Barcus's claim on January 24, 2011, without taking any action. Barcus subsequently sought and obtained unemployment benefits, and in August 2011 Barcus filed a formal claim with the Equal Employment Opportunity Commission ("EEOC"). In

November 2011 the EEOC informed Barcus that the EEOC would not pursue her claim. The EEOC dismissed the claim on December 13, 2011, and informed Barcus of her right to sue. Barcus filed this suit on March 8, 2012.

## STANDARD

Summary judgment is appropriate if the movant "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted). Conversely, the motion should be denied if "reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

## ANALYSIS

Title VII of the Civil Rights Act of 1964 prohibits discrimination by an employer against any individual with respect to terms, conditions, or privileges of employment because of that individual's sex. 42 U.S.C. § 2000e-2(a)(1). Courts have long endorsed and adopted the EEOC's interpretation that sexual harassment is a form of prohibited sex discrimination. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–66 (1986). Actionable workplace sexual harassment claims come in two forms: claims of a hostile work environment due to severe or

pervasive sexual harassment, and claims of *quid pro quo* sexual harassment. *See Pitter v. Cmty. Imaging Partners, Inc.*, 735 F. Supp. 2d 379, 390 (D. Md. 2010). Barcus asserts the latter.

To prove a claim for *quid pro quo* harassment, an employee such as Barcus must establish the following five elements:

(1) The employee belongs to a protected group.

(2) The employee was subject to unwelcome sexual harassment.

(3) The harassment complained of was based upon sex.

(4) The employee's reaction to the harassment affected *tangible aspects* of the employee's compensation, terms, conditions, or privileges of employment. The acceptance or rejection of the harassment must be an express or implied condition to the receipt of a job benefit or cause a tangible job detriment to create liability . . . .

(5) The employer . . . knew or should have known of the harassment and took no effective remedial action.

*Okoli v. City of Baltimore*, 648 F.3d 216, 222 (4th Cir. 2011) (citation omitted). Sears concedes, for purposes of this motion, that Barcus belonged to a protected group and that the harassment was based on sex, but Sears argues that Barcus has not made a *prima facie* showing of the second, fourth, and fifth elements. Because I find that Sears cannot be held vicariously liable for the sexual harassment alleged in the complaint, I do not reach the second or fourth elements of the five-part test.

An employer will be held liable for sexual harassment perpetrated by its employees if the employer "was negligent in failing to take effective action to stop harassment about which it knew or should have known." *Whitten v. Fred's, Inc.*, 601 F.3d 231, 243 (4th Cir. 2010), *abrogated on other grounds by Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2454 (2013). The initial question, then, is whether Barcus has proffered evidence sufficient to permit a reasonable

juror to conclude that Sears knew or should have known of the sexual harassment described in Barcus's complaint.

The answer is no. Barcus has identified no evidence that anyone at Sears (other than Billups) knew or should have known of her sexual relationship with Billups. Barcus never told anyone about Billups's comments or advances, nor did she discuss the sexual encounters with other Sears employees. (Barcus Dep. 97:3–17, 124:16–19, 129:12–21.) No one was present when Billups flirted with her or made inappropriate sexual comments to her, and no one witnessed the sexual encounters or the inappropriate touching. (Barcus Dep. 95:13–17, 197:9–12.) Barcus described one occasion on which Billups checked on her in the presence of another worker, but Billups made no statements on that occasion which would have alerted the other employee to the existence of an inappropriate relationship. (Barcus Dep. 96:2–9.) When asked at her deposition whether Evans knew or should have known of the sexual encounters, Barcus identified two incidents that might be relevant. First, she described an event around November 2010 when Billups sang to Barcus over a loudspeaker in Evans's presence. (Barcus Dep. 194:22–195:15.) But Evans did not react to the performance, and Barcus does not claim that the song was suggestive or otherwise likely to arouse suspicion. (Barcus Dep. 195:16–17.) Second, Barcus explained that Billups often would comment on Barcus's presence when he and Evans walked the floor together. (Barcus Dep. 197:17–198:4.) Again, however, there is nothing in the record to suggest that Evans became suspicious of these remarks. Neither of these incidents involved comments or behavior that could be considered sexually suggestive or that otherwise would put Evans on notice of the sexual relationship.

Nor has Barcus identified evidence that Sears or its agents knew or should have known that Billups conditioned an offer of future employment on her performance of sexual acts.

7

Indeed, in the current record there is no evidence that Sears knew that Billups had discussed future employment options with Barcus at all. There is no evidence that representatives of Sears discussed with Billups the potential for his promotion in November 2010, so the prospect of Billups's promotion or transfer was entirely speculative at the time of the sexual relationship. There is also no evidence that anyone other than Barcus and Billups (and possibly Evans) anticipated in November 2010 that Barcus would be fired. I therefore conclude that no reasonable juror could find that Sears knew or should have known of the sexual relationship between Billups and Barcus or of the *quid pro quo* arrangement that purportedly precipitated the sexual relationship.

But that is not the end of the inquiry. In two opinions handed down on the same day in 1998, the Supreme Court held that an employer may be vicariously liable for sexual harassment of an employee by the employee's supervisor even if the employer had no knowledge of the harassment. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753–54, 765–66 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807–08 (1998).[2] An employer is strictly liable for sexual harassment by a supervisor whenever that harassment "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Ellerth*, 524 U.S. at 765. And the employer may be vicariously liable for the supervisor's conduct even when the supervisor's harassment does not culminate in a tangible employment action. In those circumstances, however, "the employer may raise an affirmative defense to liability, subject to

---

[2] Although each of these cases involved claims of hostile work environment rather than *quid pro quo* harassment, the Court stated in *Ellerth* that the distinction between hostile work environment claims and *quid pro quo* claims is relevant only with respect to the determination whether the employee experienced actionable sexual harassment. Once the court (or the jury) has determined that the employee experienced sexual harassment, the same standard is applied to determine whether the employer may be held vicariously liable for the harassment of its employee, irrespective of whether the plaintiff asserts a claim for hostile work environment or *quid pro quo* harassment. *See Brown v. Perry*, 184 F.3d 388, 394 (4th Cir. 1999).

proof by a preponderance of the evidence: 'The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" *Pa. State Police v. Suders*, 542 U.S. 129, 137–38 (2004) (quoting *Ellerth*, 524 U.S. at 765; *Faragher* 524 U.S. at 807).

As an initial matter, *Ellerth* and *Faragher* extend vicarious liability to an unwitting employer only if the victim's supervisor perpetrated the harassment, and it does not appear that Billups supervised Barcus. In *Vance v. Ball State University*, the Supreme Court held that "an employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." 133 S. Ct. 2434, 2454 (2013). According to Colleen Kozak, the divisional vice president of the Retail Human Resources department at Sears, participants in the Manager in Training program "do not have the authority to make hiring or firing decisions, nor do they have the authority to alter an employee's compensation, authorize a transfer to another Sears store, or to demote an employee." (Kozak Aff. ¶ 5, ECF No. 19-9.) It thus appears that Billups was not empowered to take tangible employment actions against Barcus and consequently was not her supervisor for purposes of liability under Title VII.

The court nevertheless will assume for present purposes that Billups was Barcus's supervisor. The decisions in *Ellerth* and *Faragher* were premised on principles of agency, and the *Ellerth* Court noted that the law of agency sometimes extends liability to an employer for the conduct of an agent who acts with apparent authority even when the agent lacks actual authority. *See Ellerth*, 524 U.S. at 759 (citing Restatement (Second) of Agency § 8 (1957)). The Court

9

stated that apparent-authority analysis ordinarily is inapposite in the context of vicarious liability under Title VII because in most Title VII cases "a supervisor's harassment involves misuse of actual power, not the false impression of its existence." *Id.* But the Court noted in *dicta* that unusual cases may arise in which the victim was under the false impression that the perpetrator was a supervisor. *Id.* In these cases, the Court stated, the employer may be vicariously liable for the sexual harassment if the victim reasonably but mistakenly believed that the perpetrator was a supervisor. *Id.*; *cf. Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 n.7 (4th Cir. 2012) (stating that the perpetrator's apparent authority to control victim's hours was sufficient to qualify him as her supervisor for purposes of Title VII vicarious liability). Nothing in *Vance v. Ball State University* appears to contradict or overrule the *dicta* in *Ellerth*.

The court therefore will assume that Billups was a supervisor for purposes of vicarious liability under Title VII. Barcus stated in her affidavit that she believed Billups to be her supervisor—especially on days when Evans was absent. Occasionally Billups was charged with "running the store," according to Barcus, and she assumed that Billups was empowered to hire and fire employees during those periods. (Barcus Dep. 92:2–94:4, ECF No. 22-2.) Although Kozak's affidavit establishes that Barcus's impression was mistaken, it was not necessarily unreasonable. In his role as a manager in training, Billups worked closely with Evans and followed her around the store. He performed managerial functions. He also repeatedly assured Barcus that he would secure her transfer to another Sears store. Although there is ample reason to question the reasonableness of Barcus's mistaken impression that Billups was her supervisor, a reasonable juror nonetheless might find that Billups held himself out to be Barcus's supervisor, and the court will not resolve that issue on a motion for summary judgment.

Even assuming Billups to be Barcus's supervisor, though, Barcus cannot hold Sears strictly liable for sexual harassment by Billups. A victim of sexual harassment seeking to hold an employer strictly liable for a supervisor's harassment must establish two things. First, the victim must demonstrate a tangible employment action. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761. Second, the victim must establish that the supervisor's sexual harassment "culminated" in that employment action—*i.e.*, that there was a causal link between the sexual harassment and the tangible employment action. For example, the victim must demonstrate that the supervisor bestowed a tangible employment benefit in exchange for certain sexual acts (or "in exchange for refraining from reporting the unwelcome conduct"), or that the supervisor inflicted a tangible employment detriment because the victim either refused to comply with the supervisor's demands or reported the supervisor's conduct. *See Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 267–68 (4th Cir. 2001).

Barcus identifies several tangible employment actions in her complaint and deposition: She was "demoted" to visual specialist in October 2010; she was denied several promotions that went to less qualified candidates; she was denied the opportunity to transfer to other Sears stores where she would have received a promotion; and, ultimately, she was fired. But Evans, not Billups, was responsible for these decisions. There is no evidence that Evans knew of the sexual relationship between Barcus and Billups when Evans took these employment actions, nor does Barcus contend that Billups "had anything to do with [her] termination" or reassignment. (Barcus Dep. 89:1–7.) Evans informed the unemployment commission that the termination was due to insubordination, and Barcus believed the termination to be retaliation by Evans for the

11

transfer request. (Barcus Dep. 185:11–22.) That effort to transfer to the Hyattsville store was the only tangible employment action with which Billups was involved, but Billups fulfilled his promise to assist Barcus with that transfer, and Barcus admits that Evans rather than Billups ultimately was responsible for her inability to transfer. (Barcus Dep. 238:1–5.) Without a causal link between the sexual harassment and the detriments suffered by Barcus, she cannot establish that Billups's sexual harassment culminated in a tangible employment action.

Because Sears cannot be held strictly liable for Billups's conduct, it is entitled to the affirmative defense articulated in *Ellerth* and *Faragher*. Two elements comprise that defense: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765; *Faragher* 524 U.S. at 807. Barcus acknowledged in her deposition that Sears had a human resources representative in its Silver Spring store to address issues that arose between employees. (Barcus Dep. 40:10–17.) Barcus believed that the representative's fidelity to Evans impeded her ability to intervene in the acrimonious relationship that had developed between Barcus and Evans, (Barcus Dep. 43:4–9), but Barcus expressed no reservations about the representative's capacity to address Barcus's workplace issues with respect to other employees. Barcus also knew that Sears provided a telephone hotline through which employees could file complaints. (Barcus Dep. 41:4–8.) Yet Barcus never used these resources to report sexual harassment. Even when she called the Sears hotline to lodge a formal complaint about her termination, she did not report the sexual harassment to the representative with whom she spoke. (*See* Barcus Dep. 191:12–194:21.) Barcus thus failed to take advantage of the preventive and corrective opportunities provided by Sears.

Accordingly, Sears cannot be held vicariously liable for the sexual harassment described in Barcus's complaint. No one at Sears (other than Barcus and Billups) knew of the sexual encounters between Barcus and Billups, nor did Sears have knowledge of Billups's conversations with Barcus concerning opportunities for future employment. Even assuming that Billups was Barcus's supervisor, moreover, the sexual harassment did not culminate in a tangible employment action because Barcus does not allege and cannot establish a causal link between the harassment and her termination or reassignment. Finally, Barcus acknowledges that Sears made human resources specialists available to her, but she never reported the sexual harassment to anyone at Sears, even after Evans fired her in January 2011. Sears therefore is entitled to the affirmative defense articulated in *Ellerth* and *Faragher*.

## CONCLUSION

For the reasons stated above, the motion for summary judgment will be granted. Judgment will be entered in favor of Sears. A separate order follows.

<u>August 28, 2013</u>                                          <u>/s/</u>
Date                                                                 Catherine C. Blake
                                                                             United States District Judge